# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Vicky R., | Case No. 19-cv-2530 (ADM/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Andrew M. Saul, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court on Plaintiff Vicky R.'s ("Plaintiff") Motion for Summary Judgment (Dkt. 15) and Defendant Commissioner of Social Security Andrew Saul's ("Defendant") Motion for Summary Judgment (Dkt. 17). Plaintiff is seeking judicial review of a final determination by the Social Security Administration denying her application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends that Plaintiff's Motion be granted in part, Defendant's Motion be denied, and that this case be remanded to the Commissioner consistent with this Report and Recommendation.

## I. PROCEDURAL BACKGROUND

Plaintiff filed an application seeking disability insurance benefits on November 18, 2015. (R. 262.) Plaintiff alleged a period of disability beginning August 11, 2011,

which she later amended to May 5, 2015.  (R. 262, 279.)[1]  Plaintiff's relevant work history includes that of a licensed practical nurse ("LPN") and a patient scheduler.  (R. 18, 59, 133, 293.)  In her capacity as an LPN, Plaintiff worked for the Minnesota Masonic Home North Ridge as a floor nurse and Hennepin County as a school nurse, as well as at Ramsey Integrated Health Services, a home care agency, in their office as a patient scheduler.  (R. 66-69, 78, 293.)  Plaintiff's application alleged disability due to arthritis, hypertension, back pain, headaches, insomnia, attention deficit disorder, depression, and neck pain.  (R. 303.)

Plaintiff's application for disability insurance benefits was originally denied on May 10, 2016 (R. 148), and then again upon reconsideration on June 2, 2016 (R. 156).  On July 5, 2016, Plaintiff requested a hearing by an administrative law judge.  (R. 159.)  Administrative Law Judge Joseph G. Hajjarheld ("ALJ") held a hearing with Plaintiff, who was represented by Attorney Carrie Burns, on March 2, 2018.  (R. 55.)

On March 28, 2018, the ALJ rendered an unfavorable decision against Plaintiff.  (R. 121-34.)  In making this determination, the ALJ followed the five-step sequential evaluation process pursuant to 20 C.F.R. § 404.1520(a)(4).  At the first step, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of May 5, 2015 through her date last insured of September 30, 2015.  (R. 123.)  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease of the cervical spine;

---

[1]     The Social Security Administrative Record ("R.") is available at Dkt. 14.

degenerative disc disease of the lumbar spine; dysfunction of major joint, left hip degenerative joint disease status post left total hip replacement, **attention deficit hyperactivity disorder (ADHD); depressive disorder; and anxiety disorder**."  (R. 123 (emphasis added).)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CPR Part 404, Subpart P, Appendix 1.  (R. 124.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), which contained no limitations with respect to her mental impairments, albeit the ALJ did address the impairments in his analysis.  (R. 126-27.)  Based on the assessed RFC, the ALJ concluded that Plaintiff could perform her past relevant work as a patient scheduler. (R. 133.)

Plaintiff requested review on April 3, 2018.  (R. 197.)  The Appeals Council for the Social Security Administration then vacated the ALJ's decision and remanded the case with further instructions, and the Social Security Administration scheduled a supplemental hearing for March 15, 2019.  (R. 140-42, 205, 208.)

At the supplemental hearing, the same ALJ presided and Plaintiff was again represented by Attorney Carrie Burns.  (R. 33.)  According to the ALJ, the Appeals Council in its remand order directed the ALJ as follows:

> [T]o further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a; to give further consideration to the claimant's maximum residual functional capacity during the entire period at issue; to give further consideration to whether the claimant has past relevant work, and if so, can perform it; and to expand the

record with supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (6A). As detailed below, the undersigned has completed these directions from the Appeals Council.

(R. 11.)  On April 25, 2019, the ALJ rendered another unfavorable decision against Plaintiff.  (R. 8.)

Specifically, the ALJ found that Plaintiff was not disabled, as defined by the Social Security Act, 20 C.F.R. § 404.1505, during the relevant time period from May 5, 2015 through her last date of insured of September 30, 2015.  (R. 21.)  In making this determination, the ALJ again followed the five-step sequential evaluation process pursuant to 20 C.F.R. § 404.1520(a)(4).[2]  At the first step, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant time period.  (R. 14.)  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical and lumbar degenerative disc disease; left hip degenerative joint disease; and status post left total hip replacement.  (*Id.*)  As to Plaintiff's chronic kidney disease,

---

[2]    The Eighth Circuit described this five-step process as follows:

The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

hypertension, hyperlipidemia, hypokalemia, and gastroesophageal reflux disease, he stated that treatment was conservative, and Plaintiff's symptoms remained controlled with medication. (*Id.*) Moreover, the ALJ found that Plaintiff's symptoms relating to those conditions were not of a nature to "significantly limit her mental or physical abilities to perform work related activities." (*Id.*)

The ALJ also noted Plaintiff's claims of disability due to mental impairments during the relevant time period. The ALJ classified Plaintiff's mental impairments as non-severe, for "not caus[ing] more than a minimal limitation on [Plaintiff's] ability to perform basic work activities." (R. 15.) The ALJ reached this conclusion after evaluating Plaintiff's claim according to the four areas of mental functioning (the "Paragraph B criteria"). *See* 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E)(1)-(4). Accordingly, the ALJ determined Plaintiff's mental impairments to be non-severe, as they caused no more than mild limitation in any of those functional areas. (R. 15-16.)

At the third step, the ALJ determined that Plaintiff did not have an impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, subpart P, appendix 1. (R. 16-17.)

The ALJ then assessed Plaintiff's RFC. The ALJ assigned Plaintiff an "[RFC] to perform light work as defined in 20 CFR 404.1567(b) except: occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; frequently reach overhead bilaterally; and never work at unprotected heights, with dangerous moving machinery, or operate a motor vehicle." (R. 17.) With this RFC and the testimony of the Vocational Expert ("VE"), the ALJ determined that Plaintiff was

capable of performing past relevant work as an LPN and as a patient scheduler.  (R. 20-21.)  The ALJ therefore, again, concluded Plaintiff was not disabled from May 5, 2015 through September 30, 2015, pursuant to 20 C.F.R. § 404.1520(f).  (R. 21.)

The Appeals Council denied Plaintiff's request for review, which made the ALJ's second determination the final decision of the Commissioner.  (R. 1.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties.  The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.    <u>RELEVANT RECORD</u>

On April 9, 2015, Plaintiff had a psychiatric assessment performed based on her presentment that she was "depressed, stressed."  (R. 442-43.)  Plaintiff reported a history of depression for the past several years.  (R. 443.)  Plaintiff represented that she had left her employment so she could care for her parents.  (R. 443.)  Anxiety symptoms were persistent throughout the day with periods of heightened anxiety, nervousness, increased tension, ruminations, and worries.  (R. 443.)  There were reported difficulties with relaxing or feeling at ease, some irritability, and agitation, but she reported no overt panic attacks.  (R. 443.)  Plaintiff indicated the following concerns: difficulty with concentration and focus, easily being distracted/scattered in activities and conversations, procrastination, irritability, and difficulty both starting and completing activities.  (R. 443.)  The mental health status showed that Plaintiff was oriented to time, person, place,

and situation; she had normal eye contact, was well groomed, and had a normal mood; her affect was appropriate; she displayed logical thought content, was goal directed, had intact insight and judgement, and an intact memory.  (R. 445.)  Her attention and concentration appeared focused.  (R. 446.)  Plaintiff was diagnosed with attention deficit hyperactivity disorder ("ADHD"), chronic major depression, and a Global Assessment of Functioning ("GAF") score of 49.  (R. 442.)  Plaintiff was taking medication for depression and was started on Adderall for her ADHD, inattentive type.  (R. 442.)

On April 22, 2015, Plaintiff underwent an additional mental health assessment. (R. 457.)  Plaintiff complained of the following symptoms: depressed mood, insomnia, fatigue, a feeling of hopelessness and worthlessness, irritability, anxiety, racing thoughts, difficulty with concentration, avoidance behaviors, and infrequent panic attacks.  (R. 459.)  The mental status examination of Plaintiff showed that she was properly oriented, she had normal eye contact, she was well groomed, her speech was normal, her mood was normal, she was cooperative, she displayed an appropriate affect, she showed a logical thought content, and her concentration was focused.  (R. 458-59.)  Her diagnosis included a rule-out diagnosis for generalized anxiety and post-traumatic distress disorder and moderate recurrent major depression.  (R. 457.)  Plaintiff was assessed with a GAF score of 55.  (R. 457.)

During an April 29, 2015 medical appointment, it was noted that Plaintiff had a history of anxiety and mild chronic major depression, but her examination showed that she was alert and not in any acute distress, that her mentation was intact, and that her affect was normal and bright.  (R. 660-61.)

On May 4, 2015, Plaintiff was assessed with major depression and ADHD, but she had a GAF score of 60, a normal mood, and an appropriate affect. (R. 455.)

On May 11, 2015, Plaintiff was seen for a psychiatric follow-up. Plaintiff noted stress related to continuing the primary care of her father and that her depression was situational. (R. 439.) She noted that the Adderall was not helpful and that she would benefit from an increased dose. (R. 439.) Plaintiff reported that her focus and attention were impaired on most days. (R. 439.) Plaintiff also claimed occasional difficulties with memory and concentration. (R. 439.) There were also some periods of infrequent sadness and tearfulness, but no hopelessness, despondency, or suicidal ideation was reported. (R. 439.) There were some periods of anxiety and nervousness, but no overt panic attacks had been reported. (R. 439.) The mental status examination of Plaintiff showed that she was properly oriented, she had normal eye contact, she was well groomed, her speech was normal, she showed a logical thought content, her memory was intact, and her concentration was focused. (R. 440). She was assessed with chronic major depression, ADHD, and anxiety. (R. 439.) She was started on medication for her anxiety, and her dosage of Adderall was increased. (R. 440.)

On June 3, 2015, Plaintiff represented that her mental health symptoms were related to her life situation. (R. 453.) Plaintiff noted that she did not know how much longer she could care for her father. (R. 453.) Plaintiff was overwhelmed by life stressors, and she had poor self-care. (R. 453.) Her mental health exam showed she was oriented, she had a normal mood, and her affect was normal. (R. 453.) Plaintiff was assessed with anxiety and chronic major depression. (R. 453.)

Plaintiff's July 14, 2015 mental health examination showed she was oriented, she had a normal mood, and her affect was normal. (R. 451.) Plaintiff was assessed with anxiety, ADHD, and chronic major depression. (R. 451.)

On August 18, 2015, Plaintiff was seen for another psychiatric follow-up. She noted that her depression remained unchanged, but that she had only needed to take her anxiety medication twice since her May 2015 appointment. (R. 436.) She noted that the medication had stopped her anxiety. (R. 436.) There was less indication of overt ruminations, worrying, nervousness, irritability, agitation, panic attacks, or compulsive symptoms. (R. 436.) Plaintiff noted feeling depressed every day. (R. 436.) Plaintiff did represent that she had:

> done well with concentration and focus symptoms since last seen. [She] indicate[d] the following: Improved ability to concentrate and focus better throughout the day, less distractible and more organized, less irritable and moodiness, and increased ability to stay on task for greater periods of time during the day. There [we]re no concerns about depression, increased anxiety, symptoms of mania, psychosis or any cardiovascular related issues.

(R. 436.)

The mental status examination of Plaintiff showed that she was properly oriented, she had normal eye contact, she was cooperative, she was well groomed, her speech was normal, she had a normal mood and affect, she showed a logical thought content, her memory was intact, and her concentration was focused. (R. 437.) She was assessed with chronic major depression, ADHD, and anxiety. (R. 436.) The dosage of Plaintiff's depression medication was increased. (R. 438.)

During her October 14, 2015 psychiatric follow-up, Plaintiff represented that "my

psych meds are good, the increase in escitalopram was helpful." (R. 433.) Her anxiety symptoms appeared to have been lessened with fewer periods of nervousness and ruminations and less irritability, and she showed an improvement on her ability to relax. (R. 433.) Her energy and fatigue were improved, and she reported having an increased interest and pleasure in engaging in her usual activities. (R. 433.) Plaintiff indicated that she had:

> done well with concentration and focus symptoms since last seen. [She] indicate[d] the following: Improved ability to concentrate and focus better throughout the day, less distractible and more organized, less irritable and moodiness. And increased ability to stay on task for greater periods of time during the day. There are no concerns about depression, increased anxiety, symptoms of mania, psychosis or any cardiovascular related issues.

(R. 433.)

The mental status examination of Plaintiff showed that she was properly oriented, she had normal eye contact, she was cooperative, she was well groomed, her speech was normal, she had a normal mood and affect, she showed a logical thought content, her memory was intact, and her concentration was focused. (R. 434.) While Plaintiff was again assessed with ADHD, major depressive disorder and generalized anxiety, it was noted that she showed overall good symptom control. (R. 433.)

On January 26, 2016, Plaintiff's mental health examination showed she was oriented, she had a normal mood, and her affect was normal. (R. 447.) Plaintiff was assessed with anxiety, ADHD, and chronic major depression. (R. 447.) Plaintiff reported multiple stressors, including worrying about her father being in a nursing home, and claimed she had trouble sitting still because her mind was always racing. (R. 447.)

On January 28, 2016, Plaintiff was a seen for a psychiatric follow-up, during which claimed that "my meds are good, my pain is not." (R. 429.) Her depressive symptoms included hypersomnia, hyposomnia, periods of low energy and fatigue, and intermittent decreased interest and pleasure in doing usual activities, and she was slightly withdrawn. (R. 429.) Plaintiff claimed occasional difficulties with memory and concentration; a sense of feeling depressed at times on some days; some periods of infrequent sadness and tearfulness, but no hopelessness, despondency, or suicidal ideation; and some periods of anxiety and nervousness, with periods of worrying and ruminating about different stressors and issues taking place. (R. 429.) The provider noted as follows:

> The patient indicates they have done well with concentration and focus symptoms since last seen. The patient indicates the following: Improved ability to concentrate and focus better throughout the day, less distractible and more organized, less irritable and moodiness, and increased ability to stay on task for greater periods of time during the day. There are no concerns about depression, increased anxiety, symptoms of mania, psychosis or any cardiovascular related issues.

(R. 429.)

The mental status examination of Plaintiff showed that she was properly oriented, had normal eye contact, she was cooperative, well groomed, her speech was normal, had a normal mood and affect, she showed a logical thought content, her memory was intact, and her concentration was focused. (R. 430.) She was assessed with chronic major depression, moderate, ADHD, and generalized anxiety. (R. 436.)

On May 3, 2016, an agency consultant psychologist, Ann Lovko, Ph.D., opined, based on a review of the medical records, that Plaintiff had a severe organic mental

11

disorder and affective disorder.  (R. 93.)  As to the "B" criteria of the listings, Dr. Lovko found as follows:

Restriction of Activities of Daily Living: Mild

Difficulties in Maintaining Social Functioning: Mild

**Difficulties in Maintaining Concentration, Persistence or Pace: Moderate**

Repeated Episodes of Decompensation, Each of Extended Duration: None

(R. 93 (emphasis added).)

Dr. Lovko then proceeded with a mental residual capacity functional analysis.  (R. 97-99.)  With respect to Plaintiff's understanding and memory limitations, Dr. Lovko found that Plaintiff was not significantly limited with respect to her ability to remember locations and work-like procedures or her ability to understand and remember very short and simple instructions; and was moderately limited as to her ability to understand and remember detailed instructions.  (R. 97.)

As to Plaintiff's ability to sustain concentration and persistence, Dr. Lovko concluded that Plaintiff was not significantly limited with respect to her ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length

of rest periods. (R. 97-98.) Dr. Lovko also opined that Plaintiff was moderately

impaired as to her ability to understand and remember detailed instructions, carry out

detailed instructions, and maintain attention and concentration for extended periods. (R.

97-98.) Dr. Lovko also went on to find as follows:

> Careful consideration has been given to the claimant's statements regarding alleged symptoms and their effects on functioning. Claimant's allegations of [symptoms] and effects on functioning appear generally consistent with information from ME although MER shows attention/concentration are good with medicine. In terms of level of severity of functioning [claimant's allegations appear partially consistent with the information given [activities of daily living] appear [within normal limits], concentration may be mildly to moderately impacted but appears reasonable for tasks, and [claimant] appears to be able to tolerate superficial, casual interactions with others. To the extent his/her physical condition permits, the evidence suggests that claimant can understand, remember, and carry-out unskilled to semi-skilled tasks. The claimant can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors. The claimant can attend to task for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with work.

(R. 98-99.)

A different agency psychology consultant, Mary X. Sullivan, Ph.D., propounded

the same opinions on May 27, 2016 as part of her reconsideration evaluation of Plaintiff's

mental functioning. (R. 107, 112-13.)

During the hearing before the ALJ, Plaintiff testified that in 2015 she struggled

with anxiety, depression, and ADHD. (R. 43.) With respect to her ADHD, Plaintiff

testified in August 2015 that she had been withdrawing from her family and that she had

trouble staying on track with what she was doing from one project to the next. (R. 43.)

She noted that she was prescribed with Adderall, which eventually helped her. (R. 43.)

In addition, Plaintiff testified that her concentration was also affected by her anxiety for

13

which she took Valium about at least a couple times a month.  (R. 44.)

### III.    LEGAL STANDARD

Judicial review of an ALJ's denial of benefits is limited to determining whether

substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g);

*Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's

decision results from an error in law.  *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086,

1089 (8th Cir. 2018).  As recently defined by the Supreme Court:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency factfinding.
> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence to
> support the agency's factual determinations.  And whatever the meaning of
> "substantial" in other contexts, the threshold for such evidentiary sufficiency
> is not high.  Substantial evidence . . . is more than a mere scintilla.  It means—
> and means only—such relevant evidence as a reasonable mind might accept
> as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

"[T]his court considers evidence that detracts from the Commissioner's decision

as well as evidence that supports it."  *Nash*, 907 F.3d at 1089 (marks and citation

omitted).  "If substantial evidence supports the Commissioner's conclusions, this court

does not reverse even if it would reach a different conclusion, or merely because

substantial evidence also supports the contrary outcome."  *Id.*  "In other words, if it is

possible to reach two inconsistent positions from the evidence, and one of those positions

is that of the [ALJ], the Court must affirm the decision."  *Jacob R. v. Saul*, No. 19-CV-

2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) (citing *Robinson v.

Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992)).

"In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status." *Pyland v. Apfel*, 149 F.3d 873, 876-77 (8th Cir. 1998); s*ee also* 42 U.S.C. § 416(i)(3); 20 C.F.R. § 404.130; *Rasmussen v. Shalala,* 16 F.3d 1228 (8th Cir. 1994). A non-disabling condition, which later develops into a disabling condition after the expiration of a claimant's insured status, cannot be the basis for an award of disability benefits under Title II. *See Thomas v. Sullivan*, 928 F.2d 255, 260-61 (8th Cir. 1991). It is not enough that the impairments existed before the date a claimant's insured status expired; the impairments must have been disabling at that time. *See* 20 C.F.R. § 404.131(a). Evidence of a disability subsequent to the expiration of one's insured status can be relevant, however, only to the extent that helps to elucidate a medical condition during the time for which benefits might be rewarded. *See Pyland*, 149 F.3d at 877 (citing *Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989)).

## IV.    <u>DISCUSSION</u>

Plaintiff requests remand and sets forth two arguments in support of her request. She asserts remand is required because (1) the ALJ committed legal error in failing to find Plaintiff's mental impairments severe; and (2) the ALJ failed to include all mental limitations in his assessment of Plaintiff's RFC, which bears on the ALJ's conclusion that Plaintiff could perform her past work. (Dkt. 16 at 8-19.) The Court addresses each argument in turn.

**A.    The ALJ's Decision Regarding the Severity of Plaintiff's Mental Impairments**

Plaintiff finds fault with the ALJ's conclusion that her mental impairments were non-severe for the relevant time period.  (Dkt. 16 at 8.)  Specifically, Plaintiff alleges the ALJ committed legal error in coming to this decision based on a discrepancy between the ALJ's first and second decision as evidence of an improper finding; by violating the *de minimis* standard set forth under the regulations; by substituting his lay opinion for those of medical professionals on the record; by minimizing or ignoring Plaintiff's GAF scores; and by using ends-based reasoning to conclude Plaintiff's mental impairments to be non-severe.  (*Id.* at 8-13.)

At the second step, the SSA considers "the medical severity of [a claimant's] impairment(s)."  20 C.F.R. § 404.1520(a)(4)(ii).  It is a claimant's burden to demonstrate a severe medically determinable impairment at step two of the sequential evaluation, but that burden is not difficult to meet and any doubt about whether the claimant met his burden is resolved in favor of the claimant.  *See Kirby v. Astrue*, 500 F. 3d 705, 707-08 (8th Cir. 2007) (citations omitted).  An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities.  *See Kirby*, 500 F. 3d at 707; 20 C.F.R. § 404.1520(c).  The severity showing "is not an onerous requirement for the claimant to meet, but it is also not a toothless standard."  *Kirby*, 500 F.3d at 708 (citations omitted).

In determining the severity of a claimant's mental impairments at step two of the sequential evaluation, the ALJ must use the "special technique" described in 20 C.F.R. § 404.1520a.  *See Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013).  The ALJ first

"evaluate[s] [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). The ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas: (1) understand, remember, and apply information; (2) interact with others; (3) concentrate, persist, maintain pace; and (4) adapt or manage oneself. *See id.* § 404.1520a(c)(3). The criteria are rated using a five-point scale of none, mild, moderate, marked, and extreme. *See id.* § 404.1520a(c)(4). Pursuant to the Commissioner's regulations, "[i]f we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]" 20 C.F.R. § 404.1520a(d)(1). "[T]o b be considered a severe impairment at step two, a mental impairment need not cause marked restrictions." *Timi W. v. Berryhill*, No. 117CV01366SLDEIL, 2019 WL 1227840, at *2 (C.D. Ill. Mar. 15, 2019) (citing 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' [as opposed to moderate, marked, or extreme,] we will generally conclude that your impairment(s) is not severe . . . .")). Indeed, courts have concluded that a "moderate" limitation is sufficient to support a finding of "severity" at the second step of the process. *See*, *e.g.*, *Schadenfroh v. Colvin*, No. 1:13-CV-00223-SEB, 2014 WL 1260123, at *4 (S.D. Ind. Mar. 27, 2014) ("For a mental impairment to be found 'severe' at step two of the five-step sequential evaluation process, there generally must be a rating of 'moderate' or 'extreme' in one of the first three areas or a rating of more than 'none' in the fourth area.") (citing 20 C.F.R. §

17

404.1520a(d)(1)); *Stewart v. Astrue*, No. 09 C 2062, 2012 WL 2994080, at \*5 n.3 (N.D.

Ill. July 19, 2012) ("20 C.F.R. § 404.1520a(d)(1) implies that moderate impairment may

qualify as a severe impairment where the evidence shows that it is 'more than

minimal[.]'"); *Thompson v. Astrue*, No. CIV.A. 12-530, 2012 WL 5989199, at \*7 (W.D.

Pa. Nov. 29, 2012) ("Although a 'moderate' limitation was sufficient to support a finding

of 'severity' at the second step of the process, it did not satisfy the alternative criterion

for per se disability under the Listings pertaining to mental disorders."); *Pettaway v.

Astrue*, No. CA 08-0171-C, 2008 WL 5111175, at \*5 (S.D. Ala. Dec. 3, 2008) ("Section

404.1520a(d)(1) of the Commissioner's regulations clearly establishes that a degree of

functional limitation of moderate in the functional areas of activities of daily living,

social functioning, and concentration, persistence or pace, as well as a rating above none

in the fourth area, necessarily lends itself to a finding that a mental impairment is

severe.").

     With respect to step two and Plaintiff's mental impairments, the ALJ found as

follows:

> There is evidence and testimony that the claimant contends with anxiety,
> depression, and attention-deficit hyperactivity disorder. However, these
> conditions do not cause more than a minimal limitation on the claimant's
> ability to perform basic work activities. Therefore, the mental impairments
> are non-severe (20 CFR 404.1521; SSR 16-3p). In making this finding, the
> undersigned considered the four broad areas of mental functioning set out in
> the disability regulations for evaluating mental disorders and in the Listing
> of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four areas
> of mental functioning are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering, or applying
> information. In this area, the claimant has a mild limitation. The claimant
> reported difficulty remembering things and understanding instructions.

However, a review of treatment notes shows the claimant has been able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers. Further, mental status examinations repeatedly confirmed the claimant was oriented and had intact memory. Finally, intelligence testing, albeit after the date last insured, measured the claimant's full scale IQ in the high average range at 110 points (SE; 2F/13 & 21; 5F/17-18; 13F/l, 4 & 41; 19F/48; Hearing Testimony).

The next functional area is interacting with others. In this area, the claimant has a mild limitation. The claimant reported social isolation. Yet, treatment notes reflect the claimant remained social with her family, caring for her elderly parents, babysitting her grandson, and participating in legal proceedings for her grandson's father (2F/5-6, 15, 18-19 & 29; 5F/17-18; 9F/2; 13F/19, 26 & 38; 19F/39). Additionally, the claimant was able to attend numerous doctor appointments and her administrative hearing without issue. In fact, the claimant was polite and cooperative during these various interactions.

The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has a mild limitation. The claimant reported difficulty concentrating and completing tasks. Specifically, the claimant indicated that personal care and household chores take her longer than they used to. However, the claimant attributed this to her physical pain, not her psychologically based symptoms. In fact, the claimant remained alert and showed no signs of distractibility at her mental status examinations (SE; 2F/7, 13 & 21; 5F/17-18; 13F/l & 4).

The fourth functional area is adapting or managing oneself in this area, the claimant has a mild limitation. The claimant reported independence in personal care, household chores, and managing her finances. She also testified that her psychologically based symptoms were well controlled with medication. In fact, the claimant admitted she only takes her anxiety medication twice per month at the most. Further, the undersigned notes that exacerbations of the claimant's psychologically based symptoms have coincided with situational stressors in her life, for example, when her dog was put down, when her mother moved into a nursing home, when her father moved into her home and under her care, when she underwent hip surgery, when her father passed away, and when her grandson's father was facing criminal charges. Finally, during the short window from her alleged onset of disability to her date last insured, May 5, 2015 to September 30, 2015, the claimant visited her mental health provider only a handful of times, and

mental status examinations during this period were unremarkable (SE; 2F/7, 9, 12-13, 15, 18-19, 21, 23 & 29; SF/17-18; 13F/l, 4, 19, 26 & 38; 19F/32, 39 & 41; Hearing Testimony).

Because the claimant's medically determinable mental impairments cause no more than mild limitation in any of the functional areas, they are non-severe (20 CFR 404.1520a(d)(l)).

(R. 15-16.)

Given this legal standard and the ALJ's findings at step two, the Court proceeds with analyzing Plaintiff's arguments.

### 1.   Discrepancies Between Decisions

The Court first notes that Plaintiff argues that a discrepancy between the ALJ's first and second decision and no explanation by the ALJ as to why he changed his finding of Plaintiff's mental impairments from severe to non-severe is evidence of an improper finding. (Dkt. 16 at 13.) Section 405(g) provides for judicial review *only* of the Commissioner's "final decision" under Title II. *See* 42 U.S.C. § 405(g). The final decision for review is one that has signaled exhaustion of administrative recourse. *See Smith v. Barryhill*, 139 S. Ct. 1765, 1776 (2019). Thus, this Court's review of the ALJ's decision is exclusive to the ALJ's *final* decision—in this case, the ALJ's second decision upheld by the Appeals Council.

Moreover, the Eighth Circuit has concluded that collateral estoppel does not apply to an ALJ's decision that has been vacated by the Appeals Council. *See Aguiniga v. Colvin*, 833 F.3d 896, 900-01 (8th Cir. 2016) ("However, in *Hardy* we noted that collateral estoppel applies in social security disability cases only after a decision has become final. Neither Hardy nor Rucker involves what has happened here–the judgment

20

sought to be enforced (the original ALJ decision) was vacated before it became final.")

(citation omitted). Here the Appeals Court specifically vacated the ALJ's decision,

thereby precluding the application of any estoppel as to the ALJ's findings. (R. 140-42.)

In other words, discrepancies between the ALJ's first and second decision, while

understandably frustrating to Plaintiff, are not relevant to this Court's review of the ALJ's

decision.

### 2.    Plaintiff's Global Assessment of Functioning

Plaintiff cites the ALJ's failure to acknowledge her GAF's scores of 49 and 55 as

evidence of reversible error. (Dkt. 16 at 11-12.) "GAF scores have no direct correlation

to the severity standard used by the Commissioner." *Wright v. Colvin*, 789 F.3d 847, 855

(8th Cir. 2015) (citation omitted). As such, the Court finds no error in not considering or

giving any weight to the GAF scores with respect to ALJ's finding as to the severity of

Plaintiff's impairments.

### 3.    Whether the ALJ's Decision at Step Two is Supported by Substantial Evidence

Plaintiff asserts that "[i]n finding [Plaintiff's] mental impairments [to be] non-

severe, the ALJ ignored the *de minimus* standard and rejected or discredited most of the

opinions in the case." (Dkt. 16 at 8-9.) To this end, Plaintiff asserts the ALJ erred in

designating Plaintiff's mental impairment as non-severe by relying on his own opinion

instead of the medical sources of the record. (*Id.* at 11 ("In relying upon his own lay

judgment to reject the only medical opinions of the record, the ALJ committed reversible

error.").) Plaintiff specifically refers to the opinions of state agency psychology

consultants Drs. Lovko and Sullivan. (*Id.* at 9-10.) Plaintiff claims that in the ALJ's second decision, "the ALJ rejected the opinions of Drs. Lovko and Sullivan without citation to any contrary medical opinion evidence." (*Id.* at 10.) Defendant counters that the medical record and daily activities cited by the ALJ support his finding as to the severity, or the lack thereof, of Plaintiff's mental impairments, and because the ALJ discussed and explained all four mild ratings, the Court should uphold the decision at step two. (Dkt. 18 at 6-8.)

With respect to step two, the ALJ appears to have ignored the findings of the two agency psychology consultants, Drs. Lovko and Sullivan, that Plaintiff had moderate difficulty in maintaining concentration, persistence, or pace and instead found that Plaintiff only had mild limitations based on his interpretation of the medical records. (R. 15-16.) There is no indication that the ALJ considered Drs. Lovko and Sullivan's findings in connection with step two (*see* R. 15-16); he only considered the consultants' opinions with respect to the mental RFC (*see* R. 19). That said, even to the extent that that the ALJ was impermissibly "playing doctor," *see Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009), especially in light of the low bar of the evidence required at step two to show a severe impairment, this would not end the analysis, as the Court would need to determine whether such an error is harmless. In *Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007), the plaintiff contended that she was disabled, in part, due to borderline intellectual functioning. *Id.* at 886. On appeal, the claimant "assert[ed] that the ALJ erred in failing to include her diagnosis of borderline intellectual functioning as a severe impairment at step two of the sequential analysis." *Id.* at 887. Although the

Commissioner in *Nicola* conceded that the plaintiff's borderline intellectual functioning should have been considered a severe impairment, the Commissioner argued that the ALJ's error was harmless. *Id.* The Court of Appeals for the Eighth Circuit "reject[ed] the Commissioner's argument of harmless error," noting that "[a] diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence." *Id.*

Courts have been split regarding whether an error at step two can be harmless. "Some Courts have interpreted *Nicola* to mean that an error at step two can never be harmless." *Lund v. Colvin*, No. 13-cv-113 JSM, 2014 WL 1153508, at *26 (D. Minn. Mar. 21, 2014) (collecting cases); *see also Moraine v. Soc. Sec. Admin.*, 695 F. Supp. 2d 925, 956 (D. Minn. 2010) ("The Court of Appeals for the Eighth Circuit has held that an ALJ's erroneous failure, at Step Two, to include an impairment as a severe impairment, will warrant a reversal and remand, even where the ALJ found other impairments to be severe."). Other courts, including other courts in this District, have refused to interpret *Nicola* as establishing a *per se* rule that any error at step two is a reversible error. *See Lund*, 2014 WL 1153508, at *26 (collecting cases).

In the absence of clear direction from the Eighth Circuit, the prevailing view of courts in this District has been that an error at step two may be harmless where the ALJ considers all of the claimant's impairments, regardless of whether they were found severe or non-severe, in the evaluation of the claimant's RFC. *See, e.g.*, *Rosalind J. G. v. Berryhill*, No. 18-cv-82 (TNL), 2019 WL 1386734, at *20 (D. Minn. Mar. 27, 2019) ("Consistent with the prevailing view in this District, any potential error by the ALJ in

not including Plaintiff's chronic pain syndrome as a severe impairment at step two was harmless based on the ALJ's consideration of the intensity, persistence, and functional effects of Plaintiff's pain when determining her residual functional capacity."); *David G. v. Berryhill*, No. 17-cv-3671 (HB), 2018 WL 4572981, at *4 (D. Minn. Sept. 24, 2018); *Tresise v. Berryhill*, No. 16-cv-3814 (HB), 2018 WL 1141375, at *5 (D. Minn. Mar. 2, 2018) ("Courts in this district have followed the approach set forth in *Nicola* and determined that reversal based on errors at step two is only warranted when the ALJ fails to consider the omitted impairments in the RFC."); *Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010) ("The ALJ's failure to include adrenal insufficiency as a severe impairment was not by itself reversible error, because the ALJ continued with the evaluation of Plaintiff's pain and fatigue in determining Plaintiff's residual functional capacity.") (citation omitted). Such a finding is consistent with the Commissioner's regulations. *See* 20 C.F.R. § 404.1545(a)(1)-(2) (an ALJ must consider all relevant evidence, including non-severe impairments, in his RFC determination).

Here, the ALJ did consider Plaintiff's mental impairments in formulating the RFC, which often would result in a finding of harmless error at step two. (R. 19-20.) However, Plaintiff has also challenged the RFC, and as discussed in Section IV.B, the ALJ's formulation of the RFC is in error because it did not include the ALJ's own assessment of Plaintiff's mental impairments as "mild," resulting in the ALJ propounding a flawed hypothetical to the VE. The Court recommends remand on that basis, and under these circumstances, the Court cannot find harmless error with regard to step two.

Accordingly, the Court further recommends that on remand, the ALJ should address the findings of the agency mental health consultants Drs. Lovko and Sullivan as to step two.

**B.    Whether the Mental RFC is Supported by Substantial Evidence**

A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The Eighth Circuit has held that "a 'claimant's residual functional capacity is a medical question.'" *Id.* (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "'[S]ome medical evidence' must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Id.* (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam)). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)). Rather, the RFC should be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Id.* (quoting *Myers*, 721 F.3d at 527). Indeed, "'[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'" *Perks*, 687 F.3d at 1092 (quoting *Cox*, 495 F.3d at 619-20) (citations omitted).

As set forth previously, the ALJ found that Plaintiff had the following RFC:

to perform light work as defined in 20 CFR 404.1567(b) except: occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; frequently reach overhead bilaterally; and never

work at unprotected heights, with dangerous moving machinery, or operate
a motor vehicle.

(R. 17.)  The RFC did not include any mental limitations.  (*See* R. 17.)

Plaintiff argues that the RFC is not supported by substantial evidence to the extent
it excludes any mental limitations because the ALJ found at steps two and three that
Plaintiff had mild limitations in understanding, remembering, applying information;
concentrating, persisting and maintaining pace; interacting with others; and adapting and
managing herself.  (Dkt. 16 at 14-15.)  Plaintiff emphasizes that the failure to incorporate
mental limitations makes the RFC legally defective.  (*Id.* at 14 n. 14.)

However, this argument is based on a misunderstanding of the sequential
evaluation process.  As set forth previously, in evaluating the severity of Plaintiff's
mental impairments at step two and three, the ALJ used the "special technique" set out in
20 C.F.R. § 404.1520a.  Social Security Ruling 96-8p specifically admonishes ALJs that
they "must remember that the limitations identified in the 'paragraph B' and 'paragraph
C' criteria are not an RFC assessment but are used to rate the severity of mental
impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996
WL 374184, at *4 (S.S.A, July 2, 1996).  This is because the ALJ's RFC determination
"requires a more detailed assessment" than the special technique provides.  *Id.*  The
Eighth Circuit has also rejected Plaintiff's argument:

> Lacroix also contends that the ALJ's opinion is internally inconsistent
> because in finding "severe" impairments at step two of the five-step analysis,
> the ALJ stated that Lacroix's mental impairments "significantly limit" her
> "abilities to understand, remember and carry out simple instructions, to
> respond appropriately to supervisors, coworkers, and unusual work
> situations, and to deal with changes in routine work settings," Admin. R. at

16, while these limitations were not included in the ALJ's RFC analysis at step four. We reject this contention. Each step in the disability determination entails a separate analysis and legal standard.

*Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) (citing 20 C.F.R.

§ 404.1520(a)(4)).

The issue ultimately comes down whether the decision by the ALJ not to include

any mental limitations in the RFC is supported by substantial evidence in the record as a

whole during the limited period for which Plaintiff was insured. *See Chismarich*, 888

F.3d at 979.

With respect to the opinions of the agency psychologists, the Court first notes that

neither Dr. Lovko nor Dr. Sullivan were treating physicians to Plaintiff—rather, both

serve as state agency consultants and opined after reviewing the medical evidence of

record. "[T]he opinions of nonexamining medical sources are generally given less

weight than those of examining sources." *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir.

2010) (marks and citation omitted). That said, the ALJ did not totally reject the opinions

of the psychological consultants as part of his RFC analysis:

> The psychological consultants concluded the claimant would have mild to moderate limitations in mental functioning, but retained the capacity for unskilled to semi-skilled work. The State Agency consultants performed a thorough review of the available medical records and have a comprehensive understanding of agency rules and regulations. However, they did not personally examine the claimant in a clinical setting. Further, their opinions are only partially consistent with the record as a whole. **Specifically, the claimant's repeatedly normal mental status examinations dictate at most mild mental limitations**. Further, the claimant's reported improvement following hip surgery and spinal injections supports a light residual functional capacity. For these reasons, the undersigned gives some weight to the opinions of the State Agency medical and psychological consultants.

(R. 19 (emphasis added).)[3]

The record demonstrates that despite Plaintiff's subjective symptoms, the medical mental status examinations by her providers during or around the relevant period were all normal, including that she was properly oriented, she had normal eye contact, she was cooperative, she was well groomed, her speech was normal, she had a normal mood and affect, she showed a logical thought content, her memory was intact, and her concentration was focused. (*See, e.g.*, R. 434, 437, 440, 458-59.) Moreover, by August 18, 2015, the last appointment before her last date of insured status, and shortly thereafter on October 14, 2015, Plaintiff had "done well with concentration and focus symptoms," had "no concerns about depression [or] increased anxiety," and showed "good symptom control" as of October 15, 2015. (R. 433, 437.)

---

[3]    As set forth previously, with respect to Plaintiff's mental RFC, the state agency consultants concluded, separate from their analysis at steps two and three, that as to Plaintiff's understanding and memory limitations, that Plaintiff was not significantly limited with respect to her ability to remember locations and work-like procedures or understand and remember very short and simple instructions, and that she was moderately limited as to her ability to understand and remember detailed instructions. (R. 97, 112.) As to Plaintiff's ability to sustain concentration and persistence, the agency consultant psychologists concluded that Plaintiff was not significantly limited with respect to her ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; or perform at a consistent pace without an unreasonable number and length of rest periods. (R. 97-98, 112-13.) The consultants also opined that Plaintiff was moderately impaired as to her ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods. (R. 97-98, 112-13.)

However, the mild mental limitations found by the ALJ should have been incorporated into the RFC determination or a reason provided for their omission, and on remand, the ALJ should either incorporate these limitations into the RFC or provide justification for their omission. *See Martinette v. Acting Comm'r, Soc. Sec. Admin.*, No. 4:18-00533-CV-RK, 2019 WL 2914098, at *2 (W.D. Mo. July 8, 2019) (citations omitted); *see also Clevenger v. Colvin*, No. 15-CV-6087-SJ-DGK-SS, 2016 WL 3911982, at *2 (W.D. Mo. July 15, 2016) (reversing where the ALJ failed to include his own findings on social limitations in the RFC determination and did not explain why they were omitted); *Collard v. Colvin*, No. CV 12-06085-MAN, 2013 WL 1855874, at *5 (C.D. Cal. May 1, 2013) ("[T]he ALJ did not even include his own findings of mild mental limitations in assessing plaintiff's RFC. This constitutes error.").

Defendant cites cases where the failure to include mild mental limitations in an RFC was not reversible error. (Dkt. 18 at 16 (citing *Valdez v. Berryhill*, 2017 WL 5988652, at *3 (D. Co. Dec. 4, 2017), and *Taylor v. Berryhill*, 2018 WL 3887521, at *6 (E.D. Mich. July 5, 2018)).) In *Valdez*, however, the court noted that under Tenth Circuit law:

> [A]n ALJ need not discuss a claimant's "mild limitation found at step two regarding concentration, persistence, or pace" during steps four and five (the steps during which the hypothetical is posed). This is so because a mild limitation in concentration, persistence, and pace "**does not necessarily translate to a work-related functional limitation**." Therefore, "its omission from the hypothetical to the [vocational expert] is a proper consequence of the ALJ's determination that it did not have an effect on RFC." Here, the ALJ explained during the RFC determination why she did not find that Ms. Valdez's mild limitations would preclude her from work.

*Valdez*, 2017 WL 5988652, at *3 (citing *Suttles v. Colvin*, 543 F. App'x 824, 826-27 (10th Cir. 2013) and *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (unpublished)).  Similarly, in *Taylor*, the court explained "other courts in [the Eastern District of Michigan] and [this] circuit have rejected arguments similar to [plaintiff's], finding that mild limitations in the paragraph B criteria **do not always require corresponding limitations in the RFC**."  2018 WL 3887521, at *6 (emphasis added), *R.&R. adopted sub nom. Taylor v. Comm'r of Soc. Sec.*, No. 17-CV-11444-DT, 2018 WL 3870066 (E.D. Mich. Aug. 15, 2018).  The language of those cases suggests that there are cases where mild mental limitations must have corresponding limitations in the RFC, and as Defendant points out, "Plaintiff's case, both before the ALJ and this Court, was and must be decided on its own merits."  (Dkt. 18 at 17.)

Here, the Court finds the ALJ's failure to include mental limitations in the RFC was reversible error, because it bears on the hypothetical provided to the VE.  As Plaintiff argues, the ALJ erred in finding that Plaintiff could perform her past relevant work as a patient scheduler, because that conclusion was based on an erroneous RFC that did not include mild mental limitations.  (Dkt. 16 at 16-19.)  A hypothetical question need only include the impairments and limitations that the ALJ finds are credible and substantially supported by the record as a whole.  *See Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (a properly phrased hypothetical includes limitations mirroring those of claimant); *see also Lacroix*, 465 F.3d at 889 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."); *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th

Cir. 2005).

The hypothetical to the VE from the ALJ and related testimony included in

relevant part as follows:

> Q And based on the testimony you heard today and the documents that you
> have reviewed how would you describe [Plaintiff's] past work at the Ramsey
> Integrated Health Services?
>
> A It was a [sic] in my opinion, a composite job. It was a licensed practical
> nurse. The DOT here is 079.374-014. That's normally medium and SVP 6,
> skilled. Given testimony that job was required to be skilled but she did that
> job sedentary or that particular function I'm sorry. The other function was
> patient scheduler.
>
> Q One second please. Okay, one -- one second please Mr. Lindenberger. All
> right, I just want to make sure I got the first part correct. You said that was
> a licensed practical nurse, 079.374-014?
>
> A Yes, sir.
>
> Q Medium per DOT, SVP 6, performed at sedentary; is that correct?
>
> A Yes, sedentary, SVP 6.
>
> Q Okay. And all right and now you've [sic] giving me the -- the second part
> of that job -- of the second part please.
>
> A Patient scheduler.
>
> Q Okay.
>
> A DOT 205.362-018. That's normally sedentary work and semi-skilled,
> SVP 4. Testimony indicates that particular part of the job she did sedentary
> and at times she did it SVP 4 and really was required and at times at SVP 6.
> No, that particular job the LPN patient scheduler is not detailed in the
> Dictionary of Occupational Titles but it is clear given testimony that it was
> done sedentary and SVP 6.
>
> Q Mr. Lindenberger, from -- from previous testimony -- from the previous
> hearing there was testimony that [Plaintiff] worked as a -- as a school nurse,
> a licensed practical nurse as a school nurse only for -- it looks, like, for only

one school year throughout the period and given the SVP level of 6, I am not considering that job to be past job work on it's own in this case.  Mr. Lindenberger, assume a hypothetical individual of the Claimant's age and education and with the past job that you've described.  Further assume that this individual is limited as follows: This is a light exertional hypothetical with the following additional limitations.  This individual can frequently reach overhead bilaterally.  This individual can occasionally climb ramps and stairs, never ramps and stairs.  Never ladders, ropes or scaffolds.  Can occasionally balance, stoop, kneel, crouch and crawl.  This person can never work at unprotected heights and cannot work around dangerous moving machinery and can never operate a motor vehicle.  Can this hypothetical individual perform the past job that [Plaintiff] performed?

A Yes, as performed at sedentary, SVP 6, skilled.

Q Okay, so -- so [Plaintiff] can perform both parts of the job as she performed them working for the Ramsey Integrated Health Services?

**A Well, in terms of this number as he [sic] did perform both parts but that's not the job.  It doesn't exist.  As performed, yes, she performed it --**

**Q Okay, all right.**

**A -- at level 6, skilled.**

Q All right, thank you.  Is your testimony consistent with the DOT and supplemented on your experience and training?

A Yes, it is.

* * *

**Q For the next hypothetical Mr. Lindenberger, if I were to start with the hypothetical that I just gave you but if I were to add to this hypothetical the following: That this individual now is limited to in addition to the previous limitations is limited to performing only simple -- simple and routine tasks would this individual be able to perform the tasks were that [Plaintif]f performed?  Mr. Lindenberger?**

**A Oh, I'm sorry, sir.  No.**

Q Thank you and is that consistent with the DOT and supplemented by your experience and training?

A Yes, sir.

Q All right and Mr. -- Mr. Lindenberger is -- is the hypothetical -- does the hypothetical that I gave you now does it limit the individual to unskilled work?

A Yes, the word simple would be reading level 1, 2 and 3 and more than semi-skilled but simple and routine is limiting, yes.

Q All right, thank you. Okay, so let me recap what you said Mr. Lindenberger, because we are -- I'm having an [sic] hard time hearing you -- your voice fades in and out of the -- out of the speaker so I'm not sure what's going on but basically your testimony was that -- that limiting the individual to simple routine work by definition is unskilled work; is that correct?

A That is correct.

Q And that, therefore, there would be no transferable skills from [Plaintiff's] past skill work to any unskilled work; is that correct?

A That is correct.

(R. 49-52 (emphasis added).)

Given that the RFC is incomplete, it cannot be said that substantial evidence supports the conclusion that Plaintiff could perform all aspects of her past composite job as an LPN and patient scheduler, as she actually performed the work, even at a semi-skilled level, let alone at the skilled level with respect to the composite position as opined by the VE. *See* 20 C.F.R. § 404.1568(b) (defining semi-skilled work as work that "**may require alertness and close attention** to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities

which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.") (emphasis added); *see also* 20 C.F.R. § 404.1568(c) (with respect to skilled work, "[o]ther skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity").

Further, the Court notes that, in determining whether Plaintiff could perform her past work, the ALJ stated that "the claimant was capable of a reduced range of light work with no mental restrictions" (R. 20), however, this contradicts the ALJ's findings as part of his analysis of the appropriate RFC, as set forth above, setting forth "at most mild mental limitations" (R. 19). Under all of these circumstances, the Court concludes that this case should be remanded back to the ALJ to address error with respect to step two and the RFC, and to recall a vocational expert for testimony to the extent necessary to address a new hypothetical based on a modified RFC.[4]

---

[4]      The ALJ should also consider the applicability of Medical Vocational Rule 202.06, 20 C.F.R. 404 (P) Appendix 2, Rule 202.06, on remand if appropriate. *See Louise W. v. Berryhill*, No. 17-CV-4973-SRN-KMM, 2019 WL 404038, at *6 (D. Minn. Jan. 28, 2019), *R.&R. adopted*, 2019 WL 409384 (D. Minn. Jan. 31, 2019).

## V.    <u>RECOMMENDATION</u>

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED THAT**:

1.    Plaintiff Vicky R.'s Motion for Summary Judgment (Dkt. 15) be

**GRANTED** in part;

2.    Defendant Commissioner of Social Security Andrew Saul's Motion for

Summary Judgment (Dkt. 17) be **DENIED**;

3.    This case be **REMANDED** to the Commissioner pursuant to sentence four

of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Report

and Recommendation; and

4.    This case be **DISMISSED WITH PREJUDICE**.

DATED: January 28, 2021                    *<u>s/Elizabeth Cowan Wright</u>*
                                           ELIZABETH COWAN WRIGHT
                                           United States Magistrate Judge